IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| APPLIED ASPHALT TECHNOLOGIES,<br><br>        Plaintiff,<br><br>v.<br><br>SAM B. CORP., f/k/a BURDICK PAVING, a<br>Utah corporation; JOHN W. BURDICK, an<br>individual; KENNETH BURDICK, an<br>individual; JOSEPH BURDICK, an individual;<br>C. PARK BURDICK, an individual; and<br>KERRY FARNSWORTH, an individual,<br><br>        Defendants. | MEMORANDUM DECISION<br><br>Case No. 2:14-cv-00800-JNP-DBP<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

## INTRODUCTION

This case was referred to the court pursuant to 28 U.S.C. § 636(b)(1)(A). (ECF No. 31.) This matter involves alleged infringement of a patent related to certain asphalt paving processes. (*See* ECF No. 2.) Plaintiff filed a Motion to Disqualify Opposing Counsel (ECF No. 27) and a Motion for Protective Order (ECF No. 29). Plaintiff's motion for a protective order rests on the same grounds as the disqualification motion and thus its success is dependent upon the Motion to Disqualify. For this reason, the court will discuss the Motion to Disqualify Opposing Counsel (ECF No. 27) at length, and will only address the discovery motion primarily in its ruling.[1] Both motions are fully briefed and the court held an evidentiary hearing on this matter. (ECF No. 70.)

## FACTUAL BACKGROUND

Plaintiff's motion concerns a prospective client meeting held at Morriss O'Bryant Compagni, P.C.'s ("MOC"), office on September 23, 2010, to discuss a potential lawsuit to

---

[1] Thus, all references to Plaintiff's "motion" refer to the Motion to Disqualify Opposing Counsel.

enforce patent number RE39,289[2] ("Patent"). All parties agree that Craig Coburn, Julie K. Morriss, and Frank W. Compagni were present during the meeting and the participants discussed a potential patent infringement claim on behalf of Ned B. Mitchell, Inc. ("NBMI"). Craig Coburn, Ned Mitchell, and Tawna Mitchell each testified that the Mitchells were also present during the meeting. (ECF No. 27, Ex. A & B; ECF No. 43, Ex. 1; ECF No. 70.) Ms. Morriss and Mr. Compagni "do not recall anyone" or "have no memory of any representative of [Mr. Coburn's] client being present." (ECF Nos. 36 at 6; 37 at 4.) During the evidentiary hearing, Mr. Compagni said he recalled the participants at the meeting and specifically recalls that the Mitchells were not present. (ECF No. 70.).

The parties also dispute the scope of information discussed during the meeting. Defendants assert that little was discussed and that Mr. Compagni and Ms. Morriss remember even less. (ECF 34 at 3–4.) Plaintiff claims that significantly more was discussed during the meeting, though they are intentionally vague about the discussion to preserve any privilege. (*See* ECF 27 at 1–3.) The witnesses testified that the meeting lasted at least forty five minutes and no longer than ninety minutes. MOC ultimately declined to represent NBMI. (*Id.*)

Gil Mitchell testified that NBMI initially owned the Patent, but later transferred it to Tukwadt Schwoomp, LLC ("TSL"). Defendants submitted a document that purports to transfer an interest in the Patent from TSL to Plaintiff. (ECF No. 39, Ex. 1.) The document is styled a "royalty agreement." TSL remains a separate entity and even receives the patent rights back if Plaintiff elects to terminate the agreement. Ms. Mitchell's declaration states, "NBMI continued to exist following its sale and assignment of the Patent to [Plaintiff] in 2013 but since that time its activities have been limited . . . ." (ECF No. 43, Ex. 1.) Despite Ms. Mitchell's indication that

---

[2] RE39,289 is the number assigned to a September 19, 2006 reissuance of U.S. Patent No. 6,045,608, first issued on April 4, 2000.

NBMI sold the patent to Plaintiff, Plaintiff appears to have actually acquired its interest in the Patents from TSL, not NBMI. (*See* ECF No. 39, Ex. 1.)

## PARTIES' ARGUMENTS

Plaintiff Applied Asphalt Technologies seeks to disqualify attorney Frank Compagni based on Utah Rule of Professional Conduct 1.18.[3] (ECF No. 27.) Plaintiff argues that Mr. Compagni learned sensitive information about Plaintiff's case when Craig Coburn, Gil Mitchell, and Tawna Mitchell approached Mr. Compagni to discuss possibly filing a lawsuit against Defendants on behalf of Ned B. Mitchell Inc. ("NBMI"). Plaintiff also argues that it obtained NBMI's attorney-client privilege when it acquired the Patent from NBMI. Plaintiff urges that disqualification should be imputed to Mr. Compagni's firm, Morriss O'Bryant Compagni, P.C. ("MOC"), as well as associated counsel's firm, Burbidge Mitchell & Gross ("BMG"). Finally, Plaintiff requests the court prohibit the disqualified attorneys from passing along any work product, as well as written discovery Defendants have propounded.

Defendants argue that Plaintiff was not the prospective client, and thus "lacks standing" under Rule 1.18 to bring this motion. (ECF. No. 34.) Defendants also contend that only NBMI's counsel was present during the prospective client meeting and the Mitchells did not attend. Defendants also point out that Plaintiff did not acquire the attorney-client privilege from NBMI because when Plaintiff obtained rights to the Patent, Plaintiff disclaimed "rights or interests" in confidential information disclosed to Plaintiff and disclaimed any agency relationship between Plaintiff and the prior owner of the Patent. (*Id.* at 4.) Next, Defendants argue that even if Plaintiff is somehow allowed to assert disqualification under Rule 1.18, Defendants' counsel did not receive enough information to warrant disqualification here. Finally, Defendants suggest that

---

[3] District of Utah Civil Rule 83-1.1(g) requires attorneys practicing before this court to adhere to the Utah Rules of Professional Conduct.

even if MOC is disqualified, BMG received no confidential information and should be allowed to remain as counsel for Defendants.

## ANALYSIS

Defendants advance a thoughtful argument that Plaintiff cannot invoke Rule 1.18 because Plaintiff, Applied Asphalt Technologies, was never a prospective client of MOC. Ultimately, the court finds it must reject this argument because, in this case, it would exalt form over substance. This argument is addressed in Part I of this decision. Part II examines application of Rule 1.18.

I.   **Plaintiff may invoke Rule 1.18 because all prospective clients present at the meeting with Mr. Compagni and Ms. Morriss support disqualification.**

Defendants argue that Plaintiff does not have "standing" to seek counsel's disqualification; however, the present motion does not involve a true standing issue. Standing analysis in a civil context ordinarily probes whether the court has power under Article III to hear a matter. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). Likewise, the prudential standing cases examine whether the court should decline to exercise its power. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ___ U.S. ___ 134 S. Ct. 1377, 1386, 188 L. Ed. 2d 392 (2014). Defendants do not appear to argue that the court lacks (or should not exercise) power over this matter or even this motion.

Instead, the thrust of Defendants' argument appears to be that Plaintiff is not the appropriate party to raise the present conflict with the court. It is superficially tempting to call this an issue of standing and some courts have done so.[4] Nonetheless, this issue is more aptly described as whether a party should be allowed to take advantage of a particular Utah Rule of

---

[4] Several courts, including the Fifth Circuit, refer to this issue as one of "standing." *See In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 90 (5th Cir. 1976). Nonetheless, those decisions appear to rest on the rules governing attorney-client relationships, not on Article III of the Constitution.

4

Professional Conduct, and is thus more properly characterized as a matter of statutory interpretation. *See id.* at 1387 ("'prudential standing' is a misnomer as applied to the zone-of-interests analysis, which asks whether 'this particular class of persons ha[s] a right to sue under this substantive statute.'"). When viewed in this light, the identity of the party raising the disqualification becomes less important because the court has inherent power to disqualify attorneys practicing before it. *See Weeks v. Indep. Sch. Dist. No. I-89 of Oklahoma Cty., OK., Bd. of Educ.*, 230 F.3d 1201, 1208 (10th Cir. 2000) ("[O]rdinarily the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge, and is thus a matter of judicial discretion."). Thus, while the identity of the party making a disqualification motion can be important, or even dispositive as it was in the cases cited by Defendants, it does not bear on the power of the court to hear the matter. Thus, no standing issue has been raised. As discussed below, the court will allow Plaintiff to invoke Rule 1.18 because Plaintiff supports its motion with the testimony of all of the prospective clients present during the September 23 meeting.

### a. The Mitchells and NBMI are prospective clients under Rule 1.18.

Defendants assert that "courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976). Defendants assert that NBMI is the only possible prospective client. Plaintiff asserts that Mr. Mitchell also qualifies as a prospective client. Unfortunately, neither party suggests a framework for identifying a prospective client.

The Utah State Bar's Ethics Committee issued an opinion regarding duties to prospective clients shortly before Rule 1.18 was adopted. That opinion noted "that whether a person is a prospective client is a fact-intensive question." Utah State Bar Ethics Advisory Opinion Committee, Opinion No. 05-04, 2005 WL 2234101, at *3. "If there is some ambiguity in the nature of the client-attorney relationship, the law generally imposes the burden on the lawyer to

'clearly and affirmatively negative the existence of the client-lawyer relationship.'" *Id.* (quoting Restatement of the Law Governing Lawyers). This approach is partially reflected in the comments of Rule 1.18, which state: "A person becomes a prospective client by consulting with a lawyer" and whether communications "constitute a consultation depends on the circumstances." Utah R. Prof. Conduct 1.18, cmt. 2.

    1.   <u>The court finds that the Mitchells are prospective clients under Rule 1.18.</u>

Here, Plaintiff asserts the following individuals were present during the prospective client meeting: Tawna Kay Mitchell, Gil Mitchell, Craig Coburn, Julie K. Morriss, and Frank W. Compagni. (ECF No. 43, Ex. 1.) Craig Coburn, Gil Mitchell, and Tawna Mitchell all testified that the Mitchells were present during the prospective client meeting.[5] (*See id.*; ECF No. 27, Ex. 1 & 2; ECF No. 70.)  Their testimony shows that the Mitchells and NMBI sought legal advice from Mr. Compagni. (*See* ECF No. 70.)

While Defendants presented evidence that only Mr. Coburn was present on behalf of NBMI, the court concludes that the Mitchells were also present. Mr. Compagni declares that he "does not recall anyone else being in the room." (ECF No. 36 at 5.) "As [Mr. Compagni] recall[s], Mr. Coburn's client was not available for the meeting, but Mr. Coburn decided to proceed with the meeting without his client being present." (*Id.*) Similarly, Ms. Morriss indicated that "to the best of [her] recollection, the only attendees were [Ms. Morriss], Mr. Compagni, and Mr. Coburn." (ECF No. 37 at 3.) Mr. Compagni testified somewhat more forcefully during the evidentiary hearing that he remembered the meeting, and he denies that the Mitchells were present. (ECF No. 70.) Ultimately, Defendants' evidence is insufficient to rebut the Coburn's

---

[5] Defendants point out that Mr. Mitchell's testimony can be impeached by his felony conviction under 18 U.S.C. § 1503. (ECF No. 34 at 13 n.2.) Defendants also cross-examined Mr. Coburn regarding his personal interest in the outcome of this lawsuit. (ECF No. 70.)

and the Mitchells' testimony, all three of which state that the Mitchells were also present. (*See* ECF No. 27, Ex. 1 & 2; ECF No. 43, Ex. 1; ECF No. 70.). The court wishes to clarify here that it does not find that any particular witness lacked credibility. Rather, the court believes that the meeting may have been more memorable to the Mitchells, who travelled a substantial distance to meet with lawyers regarding a family business, than it might have been to attorneys who regularly meet with prospective clients. Indeed, the attorneys testified that they initially did not recall this meeting whatsoever. Accordingly, the court concludes that the Mitchells qualify as prospective clients entitled to Rule 1.18's protection because they consulted with Mr. Compagni to discuss a possible suit to enforce the Patent.

2. An individual may be a potential client even if that individual has no valid claim.

Defendants argue that only NBMI can be a prospective client here because only NBMI, as the Patent owner, had a valid patent claim at the time of the meeting. Yet, Defendants offer no authority for the proposition that a person can only be a potential client if they have a valid claim. The court is aware of none.  Presumably, potential clients seeking legal advice may ultimately discover they do not have any valid claim to pursue. Even so, those individuals may be entitled to Rule 1.18's protection. Indeed, disclosures that reveal a potential client's claim lacks merit might be the disclosures most in need of protection.

3. NBMI supports disqualification here.

Even to the extent the Mitchells cannot be considered prospective clients, NBMI supports the motion to disqualify. Gil Mitchell and Tawna Mitchell both testified in support of disqualification. (*See* ECF No. 70.) Gil Mitchell is NBMI's president. Tawna Mitchell is NBMI's vice president, secretary, and treasurer. (ECF No. 43, Ex. 1.) Additionally, Craig Coburn, the only person Defendants agree was present during the prospective client meeting,

7

testified in support of the motion to disqualify. Defendants have not offered any evidence that might suggest that this testimony does not accurately represent NBMI's position regarding the prospective client meeting.

   **b.  Prospective clients need not formally appear as movants.**

Defendants suggest that even though the Mitchells and NBMI support disqualification, Plaintiff should not be allowed to seek Mr. Compagni's disqualification. To support this argument, Defendants cite cases where one entity sold a patent interest to another entity and courts concluded the buyer was not entitled to the seller's attorney-client privilege *E.g. In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 90 (5th Cir. 1976) ("Assignment of the patent does not assign [counsel] along with it."). Defendants appear to argue that this precludes counsel's disqualification until and unless NBMI (or the Mitchells, given the courts conclusions above) moves for disqualification. Yet, even the authorities cited by Defendants distinguish cases in which a former client "appeared by counsel to argue for the disqualification even though [it] was not the formal moving party."[6] 530 F.2d at 89.

As discussed above, even to the extent NBMI is the only client that can assert the privilege, it apparently has attempted to assert it here. Defendants appear to suggest that NBMI must make a formal appearance. While this may constitute good and careful practice, such a requirement only serves to elevate form over substance. NBMI's interests are represented in the declarations accompanying Plaintiff's motion. NBMI supports disqualification. The court will not require NBMI to join the case as a party and move for disqualification. Further, the Mitchells

---

[6] The *Yarn Processing* court continued: "Even though former clients did not formally move for the disqualification, the adverse nature of their interests, relative to the new clients, of their attorneys were open and obvious and confronted the court with a plain duty to act." *Id.*

were also present and also support disqualification. It is sufficient here that each individual present on behalf of NBMI testified in favor of disqualification.

The court can imagine circumstances that could mandate a different conclusion. For example, if NBMI had agreed to waive privilege, or Defendants had shown that NBMI had some other contrary interest to the Mitchells regarding application of prospective client confidentiality, the court may reach a different result. Likewise, if Plaintiff were a true stranger to the participants in the prospective client meeting, the court might reach a different conclusion. Defendants have not shown that any such circumstances are present here. Nothing in the record suggests that NBMI's position on disqualification differs from the testimony of its officers.

Here NBMI and the Mitchells are potential clients of Mr. Compagni because they met with him to obtain legal advice. Defendants have presented thoughtful arguments to avoid application of Rule 1.18, but the result of adopting Defendants' position would undermine the very purpose of Rule 1.18: to encourage candid discussions between counsel and prospective clients. NBMI, through Mr. Coburn and the Mitchells, had those discussions. Mr. Coburn and the Mitchells filed declarations in support of disqualification here. The court will not deny those individuals the protection of Rule 1.18 merely because they are not formal moving parties. Accordingly, the court will allow the Mitchells and NBMI to assert their confidentiality interests in the information disclosed during the prospective client meeting. The court will not require those individuals to make formal appearances to assert their rights as prospective clients.

### c.   Plaintiff did not obtain NBMI's attorney-client privilege

Plaintiff argues that it is entitled to assert NBMI's attorney-client privilege because the entirety of NBMI's business was transferred to Plaintiff. (ECF No. 43 at 9 (citing *Soverain Software LLC v. Gap, Inc.*, 340 F. Supp. 2d 760, 763 (E.D. Tex. 2004) ("If the practical consequences of the transaction result in the transfer of control of the business and the

continuation of the business under new management, the authority to assert or waive the attorney-client privilege will follow as well.")).)

The court disagrees. First, Plaintiff obtained its interest not from NBMI, but from Tukwadt Schwoomp, LLC ("TSL"). (ECF No. 39, Ex. 1.) Plaintiff has not shown which of NBMI's rights, if any, TSL even owned. Second, even the "royalty agreement," by which Plaintiff apparently obtained its Patent rights, merely transfers an interest in the Patent. TSL remains a separate entity and even receives the Patent rights back if Plaintiff elects to terminate the agreement. Thus, the court concludes that Plaintiff did not obtain control of NBMI. In fact, Plaintiff appears to hold only a contingent interest in the Patent from TSL. Moreover, Plaintiff cites to the declaration of NBMI's treasurer, secretary and vice president, Tawna Kay Mitchell to support its claim that Plaintiff received all of NBMI's business. (ECF No. 43, Ex. 1.) This declaration undermines Plaintiff's point. Ms. Mitchell states, "NBMI continued to exist following its sale and assignment of the Patent . . . but since that time its activities have been limited. . . ." *Id.* This statement suggests that NBMI continued to exist after the assignment and may exist to this day. It is somewhat incongruous to claim that the "practical effect" of the transactions here "transfer[ed] control of [NBMI] and the continuation of [NBMI] under new management" as required by the rule Plaintiff attempts to invoke. *See Soverain* at 763. Plaintiff instead appears to suggest that NBMI lacks any other <u>profitable</u> operations. Plaintiff has not cited any authority that indicates NBMI's profitability is dispositive. Thus, Plaintiff did not obtain NBMI's attorney-client privilege.

Based on the foregoing, the court finds it proper to entertain Plaintiff's challenge to Mr. Compagni's representation because the court has inherent authority over such matters. Further, the court finds it proper because each individual present during the prospective client meeting

has testified in support of disqualification. Defendants' position seeks to undermine the purpose of Rule 1.18 by denying its benefit to the persons present during the meeting. "Justice will be hampered and the stature of the legal profession harmed if, to the surprise and dismay of persons who have assumed that their initial discussion was confidential, attorneys subsequently represent the opposing side in a dispute." *Poly Software Int'l, Inc. v. Su*, 880 F. Supp. 1487, 1491 (D. Utah 1995). Even the authorities Plaintiff cites do not appear to require a formal appearance on the part of a prospective client in the circumstances present here. Thus, the court now turns to application of Rule 1.18.

II.   **Mr. Compagni is not disqualified from representing Defendants.**

Plaintiff moves to disqualify Defendants' counsel pursuant to Utah Rule of Professional Conduct 1.18, which states, in relevant part:

> (b) Even when no client-lawyer relationship ensues, a lawyer who has learned information from a prospective client shall not use or reveal that information, except as Rule 1.9 would permit with respect to information of a former client.

> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

UT R RPC Rule 1.18.

a.   **Mr. Compagni received information from a prospective client as contemplated by subsection 1.18(b).**

First, as Defendants point out, subsection 1.18(b) does not prohibit representation; it only prohibits "use" of information obtained from a prospective client and acts as a predicate to subsection 1.18(c). Subsection 1.18(c) prohibits lawyers who obtain "information from a

prospective client that could be significantly harmful to that person in th[e] matter" from representing clients with interests "materially adverse" to the prospective client.

Defendants argue that they do not possess any information from the meeting because Mr. Compagni and Ms. Morriss do not remember discussing anything other than whether they would take the case on a contingency basis. The court has two concerns about this argument. First, while Defendants claim to not currently possess information due to lack of memory, counsel's memory has been refreshed previously. Mr. Compagni initially stated that he did not recall the prospective client meeting. (ECF No. 36 at 2.) After reviewing emails and being reminded of some discussion of the University of Utah band, he recalled the meeting and even remembered details, including where participants were seated. (*Id.* at 3–5.) Mr. Compagni's refreshed memory suggests there is some risk he may later remember additional facts regarding the substance of this case, even if does not remember presently.

Second, Defendants' position is undermined by Mr. Compagni's testimony that he remembers at least "some basic and vague discussion about the patent and possible infringers including Burdick Paving [(Defendants here)]." (ECF No. 36 at 4; *see also* ECF No. 70.) Counsel asserts that he does not recall the information, but this does not appear to be the appropriate inquiry under subsection 1.18(b). While counsel states that he does not <u>remember</u> information and received no documents, the court must determine whether counsel <u>learned</u> information from the meeting. (*See* ECF No. 36.)  According to his own testimony, Mr. Compagni learned some information from the prospective clients. To the extent he recalls that information at any time; he is prohibited from using it. Likewise, the predicate is met and the court will consider subsection 1.18(c).

**b. Plaintiff has not persuaded the court that Mr. Compagni received information that could be significantly harmful to NBMI or the Mitchells.**

Defendants argue that disqualification is unwarranted under subsection 1.18(c) because Defendants' interests are not "materially adverse" to <u>NBMI</u> and because counsel did not receive "information from the prospective client that could be significantly harmful to that person in this matter . . . ." Utah R. Prof. Conduct 1.18(c).

1. <u>Defendants' interests are materially adverse to the Mitchells.</u>

The court agrees with Defendants, at least in part. Plaintiff has not shown that Defendants' interests are materially adverse to NBMI because that entity has apparently assigned away its interest in the Patent. (*See* ECF No. 43 at 8; ECF No. 70.) Unfortunately, Defendants' argument here suffers from the same framing issue discussed above. Defendants assume that only NBMI may be a prospective client, but this assumes a narrow definition of prospective client, where the Rules of Professional Conduct appear to call for a more flexible approach. *See supra* Part I.a.

Defendants' interests are materially adverse to the Mitchells because TSL and the Mitchells retained a financial interest in Patent royalties. (*See* ECF No. 43 at 8.). Simply put, Defendants' interests are adverse to the Mitchells because Defendants seek to avoid enforcement of the Patent and the Mitchells have some financial interest in seeing the Patent enforced. Thus, the court turns to the nature of the information counsel received during the meeting.

2. <u>Mr. Compagni did not receive "information from the prospective client that could be significantly harmful to that person in this matter."</u>

Plaintiff has not demonstrated that Mr. Compagni received information that could be significantly harmful to the Mitchells. This inquiry presents a delicate circumstance for the court and the parties. Plaintiff's publicly-filed memoranda are intentionally vague about what was disclosed. Plaintiff asserts that critical information was presented during the meeting, but offers

little detail because Plaintiff asserts that it does not want to publicly disclose confidential

information. (*See* ECF No. 27 at 2 n.3.) Witness testimony shed some additional light on the

subject. (*See* ECF No. 70.) During the evidentiary hearing, the court mentioned to the parties that

many of the general categories described would have to be disclosed pursuant to Federal Rule of

Civil Procedure 26(a). (*See, e.g.*, ECF No. 27, Ex. B (setting forth Mr.Coburn's recollection that

the meeting covered "the evidence supporting infringement claims against Burdick Paving . . .

[and] potential infringement damages . . . ."); *see also* ECF No. 70 (containing further testimony

and cross-examination regarding the participants' memories of the meeting). Based on this

testimony, the court had concerns, but could not adequately determine whether Mr. Compagni

learned any significantly harmful information. Accordingly, to attempt to resolve this issue, the

court agreed to review an in camera submission of the purportedly harmful information.

After review of Plaintiff's submission, the court concludes that Mr. Compgni did not

receive information that could be significantly harmful to the Mitchells here. The court is

somewhat constrained in its discussion of this material given Plaintiff's desire to maintain

confidentiality. Nonetheless, the court will discuss what it can. First, no one is able to produce an

exact copy of the packet of information that the Mitchells say they provided to MOC. While

Plaintiff asserts that the Mitchells provided a packet of documents, even Plaintiff is unable to lay

hands on an exact copy of this packet. This lack of evidence lends some support to Defendants'

position that Mr. Compagni did not receive a packet, and does not currently possess such a

packet. As discussed during the hearing, the submission contains documents that represent

subsequent versions of documents purportedly provided during the prospective client meeting.

Unfortunately, the court is left to speculate about the exact condition of the documents at the

time of the meeting (with the exception of some information clearly provided to Plaintiff after the 2010 meeting).

Next, much of the information is required to be disclosed at various stages of this case. Other information, while not part of required disclosures, is commonly requested during discovery, or publicly available. Thus, its early presentation to opposing counsel will not significantly harm the Mitchells.

Finally, the court notes that some of this information is likely entitled to attorney-client privilege, but that is not the pertinent inquiry. The test is not whether the information might be privileged, but whether it is "significantly harmful" to the Mitchells in this matter. While the court is not unsympathetic to the reality that the Mitchells' former prospective ally now represents adversaries (at least, adversaries in interest), Plaintiff has not demonstrated that disqualification is appropriate here.

3.  Even assuming Mr. Compagni received significantly harmful information, disqualification is not required.

Finally, assuming that some information counsel received could be considered materially harmful to the Mitchells, disqualification is not mandated:

> In any event, a finding that a violation has occurred does not necessarily end the inquiry. "The sanction of disqualification of counsel in litigation situations should be measured by the facts of each particular case as they bear upon the impact of counsel's conduct upon the trial... The essential issue to be determined in the context of litigation is whether the alleged misconduct taints the lawsuit."

*Poly Software Int'l, Inc. v. Su*, 880 F. Supp. 1487, 1495 (D. Utah 1995).

Here, any potential prejudice is mitigated because the meeting took place over five years ago. As Defendants point out, there is a significant probability that some claims explored in 2010 (for conduct that took place even before the meeting) are now stale. Thus, the claims in this lawsuit are likely to not be identical to the specific claims proposed during the 2010 meeting.

15

Also, while the court is unwilling to categorically exclude Plaintiff from invoking Rule 1.18, the court recognizes and considers Plaintiff's relationship to meeting participants in exercising its discretion. Plaintiff has not asserted that any of its own representatives were present during the meeting. Thus, any strategy disclosed during the meeting was the strategy of the prior Patent owners, not of Plaintiff. Even to the extent the Mitchells disclosed their entire playbook to Mr. Compagni, Defendants' reliance on NBMI's strategy from five years ago comes at significant risk to Defendants.

Finally, Mr. Compagni's memory is relevant. Even if Mr. Compagni learned some significantly harmful information, he testified that he no longer remembers the merits of the case as discussed during the prospective client meeting. This is plausible given the nature of the information disclosed at a meeting that took place over five years ago. Thus, even assuming a violation occurred, the court is not inclined to order disqualification on the facts presented.[7]

## ORDER

Based on the foregoing, the court:

**DENIES** Plaintiff's Motion to Disqualify Opposing Counsel. (ECF No. 27.)

**DENIES** Plaintiff's Motion for Protective Order. (ECF No. 29.)

The court further **ORDERS** that Mr. Compagni is prohibited from disclosing any information he subsequently remembers about the September 23, 2010 meeting. Likewise, if Mr. Compagni remembers information harmful to the Mitchells he must immediately withdraw himself and Morriss O'Bryant Compagni, P.C., from representing Defendants. Also, if Mr. Compagni discovers any written materials delivered during the meeting, he must immediately

---

[7] Given that the court will not disqualify Mr. Compagni, it does not reach Plaintiff's arguments regarding imputation of the alleged conflict to MOC and BMG.

submit those materials to the court in camera, and provide a copy to opposing counsel.

IT IS SO ORDERED.

Dated this 3rd day of February, 2016.            By the Court:

_____
Dustin B. Pead
United States Magistrate Judge